## A03A1022. KIER v. THE STATE.
(587 SE2d 841)

SMITH, Chief Judge.

Sherman Kier was convicted by a jury of the offense of child molestation. Following entry of judgment on the verdict, Kier appeals, contending in his sole enumeration of error that the trial court erred in refusing to strike a juror for cause. We agree and reverse.

1. During voir dire, a potential juror identified himself as an employee at the jail where Kier had been housed prior to trial. Kier sought to excuse that juror for cause. At a bench conference, the trial court asked the juror whether he knew Kier "from . . . anywhere." The juror responded, "[j]ust passing at the jail." On further inquiry by the trial court, the juror stated that this knowledge would have no bearing on his feelings about Kier's guilt or innocence. The court asked the juror if the fact of Kier's incarceration would cause him to have a predisposition about Kier's guilt or innocence, and the juror answered, "No, I understand the process." He stated that he understood Kier was presumed innocent and that he had no independent knowledge of the charges against Kier. The prosecutor asked, "if selected as a juror would you be able to essentially keep that infor-

---

[19] *Williams v. State,* 253 Ga. App. 453, 455 (1) (a) (559 SE2d 512) (2002).

mation to yourself, that you've seen him at the jail, that he is, in fact, in jail right now?" The juror responded, "Right." The prosecutor informed the juror that he would not be permitted to mention the fact that he had seen Kier in jail, and the juror stated that this "wouldn't be a problem."

On inquiry by defense counsel, the juror stated that he was not familiar with any disciplinary proceedings in which Kier may have been involved and would not share the fact of Kier's incarceration with other jurors. The court refused to strike the juror for cause, finding that the juror was "very candid" and had indicated that he could set his knowledge aside and make a decision based on the evidence and the law. In making its decision, the court further relied on the juror's statement that he would not share his special knowledge concerning Kier with the other jurors. Kier used one of his peremptory strikes to remove the juror.

A trial court's discretion in ruling on a potential juror's impartiality is broad, and its decision can be reversed only on a finding of "manifest abuse of that discretion." (Citation and punctuation omitted.) *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). But despite this broad discretion, as the Supreme Court of Georgia stated in *Kim*, we cannot underestimate "the potential impact of juror bias." Id.

> Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. If error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors.

(Citation and punctuation omitted.) Id. See also *Park v. State*, 260 Ga. App. 879, 880-881 (581 SE2d 393) (2003).

In addressing the issues raised by this case, we turn first to the Supreme Court's analysis in *Hutcheson v. State*, 246 Ga. 13 (268 SE2d 643) (1980). In *Hutcheson*, the Supreme Court considered the issue of whether full-time police officers should be excused for cause in a criminal case and stated:

> It is inherent in the nature of police duties and the closeness with which such officers are identified with criminal procedures that questions regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations inevitably arise. These questions cannot be erased by a mere subjective, albeit sincere, declaration by the officer that he

or she can be fair and impartial as to a defendant. The constitutional test of impartiality . . . does not turn on the subjective declarations of the individual jurors.

(Citations and punctuation omitted.) Id. at 14 (1). We recognize that corrections officers in general are not subject to this strict rule of automatic removal for cause upon request by defendants. In *Kent v. State*, 179 Ga. App. 131 (345 SE2d 669) (1986), we stated that the limited police powers of corrections officers "do not necessitate the imputation of possible bias as in the instance of full-time police officers" and that no evidence showed that the corrections officers "had ever participated in any criminal investigation or prosecution." Id. at 132. See also *Butts v. State*, 273 Ga. 760, 764 (6) (546 SE2d 472) (2001); *Thompson v. State*, 212 Ga. App. 175-176 (1) (442 SE2d 771) (1994).

A critical distinction exists between this case and cases such as *Kent*, *Butts*, and *Thompson*, however. The prospective juror in this case was not just *any* corrections officer; he was an employee of the facility in which Kier was incarcerated on the charges for which he was facing trial. And even though he knew Kier only in passing, was unaware of the charges against Kier, and appeared to believe sincerely that he could impartially decide the case, his subjective beliefs were not determinative of his suitability as a juror. *Hutcheson*, supra, 246 Ga. at 14. See also *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992). Not only did he have a specialized knowledge of the legal system,[1] but he also had personal knowledge of Kier as an inmate of the jail at which he worked. We are in no manner suggesting a per se rule that all corrections officers should be excused for cause from jury service in a criminal case. Such a holding would contravene the well-established principles discussed above. But in this unique and limited circumstance, we conclude that the reasoning used by the Supreme Court in *Hutcheson* applies equally here. The nature of this prospective juror's duties as an employee of the jail in which Kier was incarcerated, his close identification with the criminal process, and his admitted familiarity with Kier inherently raise inevitable "questions regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations." *Hutcheson*, supra, 246 Ga. at 14.

The facts of this case are similar to those in *Beam v. State*, 260 Ga. 784 (400 SE2d 327) (1991), in which the Supreme Court of Georgia concluded that the trial court should have excused for cause a prospective juror who was a full-time secretary in the district attorney's office. Id. at 785-786 (2). Here, as in *Beam*, even if the prospec-

---

[1] Indeed, he testified during voir dire, "I understand the process."

tive juror was not biased, his service as a juror while he was in the employ of the jail in which Kier was incarcerated "created a substantial appearance of impropriety. The trial court should have stricken the juror to preserve public respect for the integrity of the judicial process." Id. at 786. The prospective juror in this case was not "above suspicion." (Citations and punctuation omitted.) *Hutcheson*, supra, 246 Ga. at 14. Kier should not have been required to use a peremptory strike to remove the juror from the panel, and reversal is required. See *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986).

2. Because the evidence in this case was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), it may be retried. See *Lively*, supra, 262 Ga. at 512 (3).

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 24, 2003.

Smith, Hannan & Parker, *Bradley M. Hannan,* for appellant.

*J. David Miller, District Attorney, Laura A. Wood, Assistant District Attorney,* for appellee.