### A08A0866. SMITH v. THE STATE.
(667 SE2d 421)

MIKELL, Judge.

After a jury trial, Reginald Smith was convicted of burglary. On appeal, Smith argues that the trial court erred in denying his motion to suppress an identification made from a photographic lineup and challenges the sufficiency of the evidence. We affirm.

> On appeal, [Smith] no longer enjoys the presumption of innocence. We view the evidence in the light most favorable to the verdict and do not weigh the evidence or determine witness credibility. We determine only whether the evidence was sufficient for a rational trier of fact to find [Smith] guilty of the charged offenses beyond a reasonable doubt.[1]

---

[1] (Footnotes omitted.) *Gray v. State*, 291 Ga. App. 573, 574 (1) (662 SE2d 339) (2008).

So viewed, the evidence adduced at trial shows that at approximately noon on July 9, 1999, 11-year-old Alton McGhee was looking out of the bathroom window of his apartment when he saw appellant Smith taking speakers out of the apartment of McGhee's neighbor, Wanda Cain, and putting them into his truck. McGhee testified that he could not see the face of the person who was with Smith very well, but he could clearly see Smith, whom he had seen before at Cain's apartment during a party. McGhee recalled that he was at the party because he was friends with Cain's children. McGhee further testified that the man with Smith carried Cain's stereo to the truck and that he had seen the stereo and speakers in Cain's apartment. McGhee testified that Cain came to him to ask about the burglary and that several days later, he picked a picture of Smith out of a photographic lineup. McGhee also identified Smith at trial.

Cain testified that she spent the night at her sister's house on July 9, 1999, and that she received a call from her cousin, to whom she had given the key to her apartment, informing her that her apartment had been burglarized. Cain further testified that when she returned to her apartment, she determined that her microwave, stereos, telephone, and television had been stolen and that the kitchen window was broken; that her neighbor, McGhee, knocked on her door while she was waiting for the police; and that McGhee described the person who broke into the apartment and the car that person drove. Based on McGhee's descriptions of the perpetrators, Cain suspected that Reginald Smith and his nephew, Frank, were the persons who burglarized her apartment. Cain testified that she knew Smith because he had attended some of her family's gatherings as well as a gathering at her apartment.

Based upon Cain's statement that she suspected Smith was the perpetrator, Officer Duncan of the City of Atlanta Police Department compiled pictures of individuals bearing Smith's name from which Cain picked out appellant Reginald Smith. Cain testified that Smith did not have a key to her apartment or her permission to enter it or remove anything therein, and neither did his nephew, Frank.

Officer Bruce Lee Ford of the City of Atlanta Police Department responded to the call regarding the burglary on the evening of July 10, 1999. Officer Ford testified that he interviewed Cain, who gave him a list of items that were missing from her home and identified the person whom she thought committed the burglary. Officer Ford further testified that he spoke to McGhee, who told him that he saw a man taking items from Cain's apartment and putting them into a small white truck. Officer Ford also observed that the kitchen window was broken. On cross-examination, Officer Ford testified that McGhee told him that the perpetrator drove a white truck and was bald.

Officer Scott Duncan testified that he spoke with Cain on July 14, 1999, and showed her an array of photos from which she identified Smith. Officer Duncan included the picture that Cain selected in a photo lineup, which he then presented to McGhee. Upon meeting McGhee, Officer Duncan told him that he was there to investigate the burglary and that he understood that McGhee had witnessed the burglary, and asked him to pick out the person he saw. Officer Duncan testified that McGhee picked out Smith, after looking at the photographs for less than one minute. Officer Duncan then obtained a warrant for Smith's arrest and arrested him a couple of days later.

1. Smith argues that the trial court erroneously denied his motion to suppress the identification made by McGhee because the photographic lineup was impermissibly suggestive. Smith maintains that McGhee described the perpetrator as "bald" and that some of the pictures in the lineup did not depict bald men. "We review a trial court's denial of a motion to suppress by construing the evidence most favorably to upholding the court's findings and judgment, and we accept the court's ruling unless clearly erroneous."[2] Here, we find no error.

> Whether a photographic lineup is admissible depends on whether the identification procedure was impermissibly suggestive and whether, under the totality of the circumstances, the suggestiveness resulted in a substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[3]

Pretermitting the question of whether the photographic lineup was impermissibly suggestive, we find it highly unlikely that the suggestiveness resulted in a substantial likelihood of irreparable misidentification.[4] McGhee testified that he could see Smith clearly, he was certain that Smith was the perpetrator, and he was able to identify Smith in a lineup within a few days after the incident occurred. Additionally, McGhee testified that he had seen Smith before at a

---

[2] (Citation omitted.) *Price v. State*, 289 Ga. App. 763, 765-766 (2) (658 SE2d 382) (2008).

[3] (Footnotes omitted.) *Beals v. State*, 288 Ga. App. 815, 817-818 (3) (655 SE2d 687) (2007).

[4] See id. at 818 (3).

party at Cain's house, and Cain testified that Smith had indeed been present at a party at her home.

Smith also argues that McGhee's identification of Smith should have been suppressed because McGhee signed a statement prepared by Smith's attorney indicating that it made a difference in his identification that four of the men in the lineup had hair. At trial, McGhee testified that he signed the statement because he was told to do so and that his identification was not affected by whether the men in the photos had hair. As identity is a question for the trier of fact, the credibility of the witness making such identification is not to be decided by this Court where a witness identifies a defendant.[5] Instead, McGhee's credibility as well as the weight given his testimony on the perpetrator's identity were issues for the jury.[6] Here, the statement at issue was admitted into evidence, and McGhee was cross-examined about the statement. Despite the inconsistencies argued by Smith, the jury obviously chose to believe McGhee's identification. Therefore, we conclude that the trial court's denial of Smith's motion to suppress the photographic lineup identification was not clearly erroneous.

2. Smith argues that his motion for new trial should have been granted because the evidence did not support his conviction. Specifically, Smith argues that the combination of McGhee's age and his contradictory testimony rendered the evidence against Smith insufficient. We disagree.

Smith acknowledges that "a child is not incompetent as a matter of law because of [his] infancy."[7] Nonetheless, he urges us to consider the inconsistencies in McGhee's testimony to reverse the trial court. However, "[i]nconsistency in a child's testimony does not render [that child] incompetent to testify."[8] Moreover, as discussed above, it is the duty of the jury to assess a witness's credibility, not this Court.[9] Therefore when we review the sufficiency of the evidence, "[we] do[ ] not re-weigh the evidence or resolve conflicts in testimony, but instead defer[ ] to the jury's assessment of the weight and credibility of the evidence."[10]

Pursuant to OCGA § 16-7-1 (a), a person commits burglary "when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of

---

[5] *Buice v. State*, 289 Ga. App. 415, 417 (1) (657 SE2d 326) (2008).

[6] See *Qadir v. State*, 235 Ga. App. 884, 885 (3) (510 SE2d 362) (1999).

[7] (Citations omitted.) *London v. State*, 274 Ga. 91, 93 (3) (549 SE2d 394) (2001).

[8] (Citations omitted.) *Sprayberry v. State*, 174 Ga. App. 574, 576 (1) (330 SE2d 731) (1985).

[9] *Buice*, supra; *Qadir*, supra.

[10] (Citation omitted.) *Curinton v. State*, 283 Ga. 226, 228 (657 SE2d 824) (2008).

another." As the testimony of a single witness is sufficient to establish a fact,[11] the evidence authorized the jury to find beyond a reasonable doubt that Smith entered Cain's apartment without authority and with the intent to commit theft.[12] Accordingly, this enumerated error fails, and we affirm Smith's conviction.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 17, 2008.

*Thomas S. Robinson III*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[11] OCGA § 24-4-8.

[12] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).